J-S65026-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: INVOLUNTARY TERMINATION OF PARENTAL RIGHTS TO A.R., A MINOR | : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: D.Y., FATHER | : | No. 1176 MDA 2018 |

Appeal from the Decree Entered July 3, 2018
In the Court of Common Pleas of Lancaster County
Orphans' Court at No:  2017-02365

BEFORE:  SHOGAN, J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY STABILE, J.:          **FILED: JANUARY 17, 2019**

D.Y. ("Father") appeals from the decree entered July 3, 2018, in the Court of Common Pleas of Lancaster County, which terminated involuntarily his parental rights to his minor daughter, A.R. ("Child"), born in July 2017.[1] After careful review, we affirm.

The factual and procedural history of this matter is not entirely clear from the certified record.  Sometime prior to Child's birth, Mother contacted the private adoption agency, Adoptions from the Heart ("the Agency"), and arranged to place Child for adoption.  N.T., 3/28/18, at 24.  Mother provided the Agency with Father's name, but not with any other information that would have enabled the Agency to contact Father.  *Id.* at 29.  Eventually, the Agency discovered that Father was incarcerated.  *Id.* at 30.  The Agency first made

---

[1] D.R. ("Mother") executed a consent to adoption form on July 25, 2017.  The record does not indicate whether the orphans' court confirmed Mother's consent and terminated her parental rights.

contact with Father in approximately August 2017. *Id.* at 29-30. Father did not consent to Child's adoption and suggested that the Agency place Child with her paternal grandmother.[2] *Id.* at 30-31.

Father is incarcerated in New Jersey and is serving a sentence of forty-two to sixty months of incarceration for convictions of unlawful possession of handguns and receiving stolen property. *Id.* at 48-49; Petitioner's Exhibit 7. Father indicates that his maximum sentence will expire in December 2020 assuming that he commits no infractions while in prison. N.T., 3/28/18, at 49-50. Critically, Father was convicted of statutory rape in Georgia in 2011. *Id.* at 12; Petitioner's Exhibits 1, 6. Georgia law requires that Father register as a sexual offender for the remainder of his life, and he has pled guilty to violating the requirements of his registration on two occasions. N.T., 3/28/18, at 12-13, 50; Petitioner's Exhibits 2-6.

On October 23, 2017, the Agency filed a petition to terminate Father's parental rights to Child involuntarily. The orphans' court conducted a hearing on March 28, 2018. Father had counsel during the hearing and participated from prison via videoconference. Angela Reick, Esquire, represented Child,

---

[2] The Agency placed Child in the care of a pre-adoptive family only a few days after her birth in July 2017. N.T., 3/28/18, at 16. The pre-adoptive family meets Child's needs and cares for her appropriately. *Id.* at 16-19. Child shares a bond with the family and is "extremely well-adjusted" in their home. *Id.* at 19, 28.

who was less than a year old at the time, as her guardian *ad litem*.[3] Following

the hearing, on July 3, 2018, the court entered a decree terminating Father's

parental rights. Father timely filed a notice of appeal on July 18, 2017, along

with a concise statement of errors complained of on appeal.

Father now raises the following claims for our review.

> 1. Where Father, who was incarcerated, learned that he was the possible father of a child placed at birth with an adoption agency, and where with the aid of his mother he immediately and diligently attempted to comply with the Agency's request for DNA testing as well as advising it of the availability of his mother to care for the child, did the court err by involuntarily terminating his parental rights pursuant to 23 Pa. C.S.A. section 2511[(a)](2)?
>
> 2. Did the court err by automatically granting the petition for involuntary termination because Father was obligated to register as a sexual offender without considering whether, under the particular facts of this case[,] it was warranted?

Father's Brief at 4 (suggested answers omitted).[4]

We consider these claims mindful of our well-settled standard of review.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and

_____

[3] **See In re T.S.**, 192 A.3d 1080, 1092-93 (Pa. 2018) (holding that a very young and pre-verbal child's right to counsel is satisfied when the orphans' court appoints an attorney as the child's guardian *ad litem* and the attorney represents the child's best interests).

[4] On July 30, 2018, the Agency filed a motion to quash this appeal on the basis that Father "failed to claim any actual assertions of judicial error or abuse of discretion" with regard to Section 2511(a)(11). Motion to Quash, 7/30/18, at 3-4 (unnumbered pages). Father included a claim challenging termination pursuant to Section 2511(a)(11) in his statement of questions involved and concise statement of errors complained of on appeal, and developed that claim in the argument section of his brief. Therefore, we deny the Agency's motion.

credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Section 2511 of the Adoption Act governs involuntary termination of parental rights. *See* 23 Pa.C.S.A. § 2511. It requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In the instant matter, the orphans' court terminated Father's parental rights involuntarily pursuant to Sections 2511(a)(2), (11), and (b). We need only agree with the court as to any one subsection of Section 2511(a) in order to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004). Here, we consider the court's

- 4 -

decision to terminate pursuant to Section 2511(a)(11), which provides as follows.[5]

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> ***
>
> (11) The parent is required to register as a sexual offender under 42 Pa.C.S.[A.] Ch. 97 Subch. H (relating to registration of sexual offenders) or to register with a sexual offender registry in another jurisdiction or foreign country.[6]

23 Pa.C.S.A. § 2511(a)(11).

In this case, Father concedes that he is a registered sexual offender in Georgia. Father's Brief at 14. However, he insists that the language of Section 2511(a) is discretionary, rather than mandatory, such that the orphans' court was not obligated to terminate his parental rights based solely on his sexual

---

[5] Father waived any challenge regarding Section 2511(b) by failing to include it in his statement of questions involved and concise statement of errors complained of on appeal. *See In re M.Z.T.M.W.*, 163 A.3d 462, 466 (Pa. Super. 2017) ("[I]ssues not included in an appellant's statement of questions involved and concise statement of errors complained of on appeal are waived."). Father also failed to develop any such claim in the argument section of his brief. *Id.* at 465-66 ("[T]his Court will not review a claim unless it is developed in the argument section of an appellant's brief, and supported by citations to relevant authority."). Thus, we review only the decision of the orphans' court to terminate parental rights pursuant to Section 2511(a).

[6] 42 Pa.C.S.A. Chapter 97 Subchapter H contains the Sex Offender Registration and Notification Act ("SORNA"). *See* 42 Pa.C.S.A. §§ 9799.10–9799.41.

offender status. *Id.* He directs our attention to the portion of Section 2511(a) stating that parental rights "*may* be terminated" if certain requirements are met. *Id.* (quoting 23 Pa.C.S.A. § 2511(a)) (emphasis in original). Based on this language, he contends that the court committed an error of law by failing to engage in a "discretionary analysis which considered factors such as the nature of the crime which forms the basis of the registration requirement, Father's age at the time of the crime, [and] the age of conviction" before terminating his parental rights. *Id.* at 15.

Father's claim does not entitle him to relief. We agree with Father that the Adoption Act leaves the ultimate decision as to whether to terminate parental rights involuntarily within the sound discretion of the orphans' court. However, the language of Section 2511(a)(11) does not require an analysis of possible mitigating factors as Father suggests and this Court lacks the ability to add such a requirement to the statute. The certified record is clear that Father is registered as a sexual offender "in another jurisdiction[.]" 23 Pa.C.S.A. § 2511(a)(11). That by itself is sufficient to support the court's termination decision pursuant to Section 2511(a) and we see no basis upon which to conclude that the court committed an error of law or abused its discretion.[7]

_____

[7] In reaching this conclusion, we note that an orphans' court may still consider mitigating factors such as the ones Father suggests as part of its analysis of a child's needs and welfare pursuant to Section 2511(b). For example, a court

Based on the foregoing, we affirm the court's July 3, 2018 decree.

Decree affirmed. Motion to quash denied.

Judge McLaughlin joins the memorandum.

Judge Shogan files a concurring and dissenting statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 01/17/2019

---

could exercise its discretion and decline to terminate parental rights on the basis that a sexual offender parent appears rehabilitated and has a significant bond with his or her child, such that severing that bond would cause the child to suffer severe emotional harm. ***See In re Adoption of C.D.R.***, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting ***In re N.A.M.***, 33 A.3d 95, 103 (Pa. Super. 2011)) (explaining that courts conducting a Section 2511(b) analysis should consider the "importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child."). Here, as noted above, Father waived any challenge to Section 2511(b).